The WESTERN CASUALTY AND SURETY COMPANY, Plaintiff and Appellant,

v.

Ralph MARCHANT, Darve Miller, and Sherman Peterson, Defendants and Respondents.

No. 16512.

Supreme Court of Utah.

July 11, 1980.

---

Roger H. Bullock of Strong & Hanni, Salt Lake City, for plaintiff and appellant.

Craig S. Cook, Salt Lake City, for Marchant and Miller.

Wendell E. Bennett, Salt Lake City, for Peterson.

CROCKETT, Chief Justice:

Plaintiff Western Casualty, which issued an automobile liability insurance policy to defendant Ralph Marchant, appeals from a finding that a clause excluding coverage of the insured's own employees was not applicable to defendant Sherman Peterson who was injured while he was working on defendant Marchant's demolition job site.

Plaintiff's principal contention is that "the only reasonable conclusion from the evidence" is that Peterson was working as an employee of Marchant, and not of Gary Yates, as the trial court found.[1]

Defendant Marchant operates a trucking business whereby he leases both trucks and drivers to other businesses for various purposes. He is also a licensed demolition contractor. In the early fall of 1977, he agreed to perform demolition work on a lot in Clearfield, Utah. He and Gary Yates, who operated a similar truck leasing business, had a long standing arrangement whereby they sold and hauled fill dirt and topsoil from land owned by Marchant. Any material sold by Yates would be charged against his account, with the understanding that when Marchant needed an extra truck or driver, he could borrow Yates' equipment and/or drivers and Yates' account would be credited accordingly.

Pursuant to that arrangement, Marchant asked Sherman Peterson, who worked for Yates at the time, if he would be interested in working one or two days on the demolition project in Clearfield. After Peterson agreed, Marchant told him that the work would begin on Saturday, September 3, 1977, and that Peterson was to use one of Yates' trucks on the job. Marchant also talked with Yates, who agreed to the use of his truck and driver on the weekend demolition job. Yates further testified that he had paid Peterson in advance for that work.

On September 3, Peterson and four other men reported to Marchant for work, who then explained how the demolition job was to proceed. At the end of the day, he told the men to return the following Monday. That morning, since the Yates truck needed repairs, Peterson used one of Marchant's trucks. After he had returned from the dumping site to pick up his second load, Peterson noticed that the loading positions of the other trucks had changed. He left his truck to determine whether there was a new loading procedure and, while he was talking to one of the other drivers, he was hit by a truck being backed up by defendant Darve Miller.

Peterson subsequently brought two actions, one against plaintiff Western Casualty to obtain the no-fault benefits, i. e., the personal injury protections (PIP) for medical expenses, loss of income and loss of services.[2] He also initiated an action for general damages against Marchant. When the plaintiff was notified of these claims, it took the position that Peterson was an employe of Marchant, and thus excluded under its policy, and refused to pay either the PIP no-fault benefits or to afford its insured, Marchant, a defense in the action against him. Controversy arose and the plaintiff brought this declaratory judgment action to have its rights determined.

It is upon the basis of the testimony and the evidence of the parties relating to the foregoing that the trial court made its finding that, at the time of the accident, Peterson was not the employee of Marchant, but was still in the employ of Gary Yates. It further found that neither Marchant nor Gary Yates carried workman's compensation coverage and, thus, Peterson was not entitled to receive any workman's compensation.

The insurance policy issued by the plaintiff provides liability coverage for bodily injury "arising out of the ownership, maintenance or use of the automobile" and that the plaintiff "shall defend any suit alleging

---

1. We assume that the trial court believed those aspects of the evidence which support the findings and judgment. *Tate's Inc. v. Little America Refining Co.*, Utah, 535 P.2d 1228 (1975); *Cornia v. Cornia*, Utah, 546 P.2d 890 (1976).

2. The amounts claimed for those losses were $5,031.47, $7,800.00 and $4,800.00, respectively.

such bodily injury . . . and seeking damages which are payable" under the terms of the policy. The express language of the exclusion relied upon by the plaintiff is that the policy does not apply

. . . to (1) *bodily injury to any employee of the insured* arising out of and in the course of . . . employment by the insured, or (2) *any obligation for which the insured* . . . *may be held liable under any workman's compensation,* unemployment compensation or disability benefits *law,* or under any similar law . . . . [Emphasis added.]

■ When a question arises as to whether one person is an employee of another, it is to be resolved as are other questions of fact.[3] In doing so, there are a number of factors which should be considered, no one of which is necessarily alone controlling.[4] In general, it can be said that an employee is one who is hired for compensation, for a substantial period of time, to perform duties wherein he is subject to a comparatively high degree of direction and control by the one who hires him.[5]

■ When, as in the present case, the question relates to a person alleged to be a "loaned employee," there are additional factors to be considered: (1) for whose benefit the work was done; (2) who paid the employee; and, as pertinent to the issue of control, (3) whether the "lending" employer also furnished specialized equipment to be used by the employee.[6] In focusing the foregoing principles upon our problem, there is yet another proposition that has application here: If it is shown that a person is an employee of one employer (Gary Yates), the burden of proving a change of employment status is upon the party (plaintiff) contending that such a change has occurred.[7]

■ Upon our survey of the evidence in the light of the foregoing, we see no reason to disturb the trial court's determination that Sherman Peterson was employed by Gary Yates at the time of his injury, and not by defendant Marchant. It therefore correctly ruled that the clause in plaintiff's policy excluding Marchant's employees does not protect plaintiff from paying Peterson the PIP no-fault benefits under the policy, nor from its obligation to defend Marchant in the suit brought against him by Peterson.

Plaintiff also attacks the trial court's granting of defendant Marchant's motion for attorneys' fees, alleged to be taxable costs. The court's action on that motion stated:

Pursuant to the Motion of defendant Marchant . . . and good cause appearing therefor; IT IS HEREBY ORDERED that . . . he is . . . awarded . . . $3,500.00 attorney fees.

In support of that order, defendant relies on Section 78–33–10, U.C.A., 1953, pertaining to declaratory judgments. It provides that the court "may make such award of costs as may seem equitable and just." It is to be noted that the statute makes no express mention of attorneys' fees.

■ The basic rule which this Court has declared and long adhered to is that attor-

**3.** *Truck Insurance Exchange v. Yardley,* Utah, 556 P.2d 494 (1976); *Kiefer Concrete, Inc. v. Hoffman,* Colo., 562 P.2d 745 (1977); *Peterick v. State,* 22 Wash.App. 163, 589 P.2d 250 (1978).

**4.** *Harry L. Young & Sons, Inc. v. Ashton,* Utah, 538 P.2d 316 (1975); *Storrusten v. Harrison,* 169 Mont. 525, 549 P.2d 464 (1976); *Antonini v. Hanna Industries,* Nev., 573 P.2d 1184 (1978).

**5.** *Buhler v. Maddison,* 109 Utah 267, 176 P.2d 118 (1947); *Christean v. Ind. Comm.,* 113 Utah 451, 196 P.2d 502 (1948); *Oberhansly v. Travelers Ins. Co.,* 5 Utah 2d 15, 295 P.2d 1093 (1956);

*Adamson v. Okland Construction Co.,* 29 Utah 2d 286, 508 P.2d 805 (1973); *Harry L. Young & Sons, Inc. v. Ashton,* supra, note 4.

**6.** *Harry L. Young & Sons, Inc. v. Ashton,* supra, note 4; *Kepa v. Hawaii Welding Co. Ltd.,* 56 Haw. 544, 545 P.2d 687 (1976); *Storrusten v. Harrison,* supra, note 4.

**7.** *Pichler v. Pacific Mechanical Constructors,* 1 Wash.App. 447, 462 P.2d 960 (1969). That the insurer has the burden of proof that a loss is excluded from coverage, see *Standford v. American Guaranty Life Ins. Co.,* 280 Or. 525, 571 P.2d 909 (1977).

neys' fees are not to be allowed unless they are provided for by contract or by statute[8] or where they are a legitimate item of damages caused by the other party's wrongful act.[9] As an extension of the latter proposition, we have no doubt that the statutory authorization to award such "costs as may seem equitable and just" may include an award of attorneys' fees if they were necessarily incurred because of litigation which was not resorted to in good faith, but was merely spiteful, contentious or obstructive.[10]

■ It is true that in granting defendant's motion for attorneys' fees, the trial court recited "for good cause shown." But that is merely a conclusion, without any finding of fact which would bring the plaintiff's conduct within the rules just stated above. Moreover, no such finding would be warranted where the plaintiff merely stated its position and initiated this action for determination of what appears to be a justiciable controversy. It would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts.[11]

There being no foundation for the award of attorneys' fees to the defendant,[12] that portion of the judgment is vacated; and with that modification, the judgment of the trial court is affirmed. No costs awarded.

MAUGHAN, WILKINS and HALL, JJ., concur.

STEWART, J., concurs in result.

---

**8.** *Nelson v. Newman*, Utah, 583 P.2d 601 (1978); *Biesinger v. Behunin*, Utah, 584 P.2d 801 (1978); *Dyson v. Aviation Office of America, Inc.*, Utah, 593 P.2d 143 (1979).

**9.** 20 Am.Jur.2d, Costs, sec. 72; *Espinoza v. Safeco Title Ins. Co.*, Utah, 598 P.2d 346 (1979).

**10.** *American States Ins. Co. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042 (1971). See statement in

*Ranch Homes, Inc. v. Greater Park City Corp.*, Utah, 592 P.2d 620 (1979).

**11.** Utah Const., Art. I, sec. 11.

**12.** Cf., *American States Ins. Co. v. Walker*, supra, note 10 (where the record indicated that an award of attorneys' fees was justified).