708 So.2d 599 (1998)
EXECU-TECH BUSINESS SYSTEMS, INC., Appellant,
v.
NEW OJI PAPER COMPANY LTD. n/k/a Oji Paper Company Ltd., Appellee.
No. 97-2376.
District Court of Appeal of Florida, Fourth District.
January 21, 1998.
Order Certifying Conflict April 1, 1998.
Robert C. Gilbert of Robert C. Gilbert, P.A, Coral Gables, Daniel E. Gustafson and Renae D. Steiner of Heins Mills & Olson, P.L.C., Minneapolis, MN, Joseph R. Saveri and Fabrice V. Nijhof of Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, and Kenneth A. Wexler of Miller Faucher Chertow Cafferty and Wexler, Chicago, IL, for appellant.
Craig D. Olmstead of Kelley Drye & Warren LLP, Miami, and Richard W. Donovan of Kelley, Drye & Warren LLP, New York City, for appellee.
Ignacio E. Sanchez and Craig Olmstead of Kelley Drye & Warren LLP, Miami, and Richard W. Donovan of Kelley, Drye & Warren LLP, New York City, for appellee (on motion to certify conflict).
*600 PER CURIAM.
In this class action, the trial court dismissed appellant's complaint as to appellee because of a lack of personal jurisdiction. The dismissal was without prejudice, the trial judge stating that if appellant could "dig up something else," in its allegations against the non-resident co-conspirator she would hear it and allow amendment prior to the trial date as to the other defendants. We affirm.
Appellant, a consumer of thermal facsimile paper, sought relief on behalf of all similar consumers based on allegations that eight defendants (all of which are foreign corporations), including appellee Oji, conspired during the period of February 1990 through March 1992 to fix the price of "jumbo rolls" of fax paper, which were then cut into smaller rolls that were sold to the ultimate consumers in the United States. Appellant's single count class action complaint alleged that the defendants conspired to fix the price of the jumbo rolls, in violation of sections 501.201-501.213, Florida Statutes; that Oji is a Japanese corporation with its principle place of business in Tokyo; that it manufactured the jumbo rolls in Japan, and the rolls were then cut and distributed for sale in the United States by both Japanese and United States trading houses.
The complaint made no specific reference to the Florida long-arm statute and did not allege that any of the paper manufactured by Oji was ever sold in Florida. In its response to Oji's motion to dismiss, appellant disclosed that it was asserting long-arm jurisdiction under sections 48.193(1)(a) and (b) Florida Statutes, and a conspiracy theory that would attribute tortious acts committed in Florida by one defendant to all defendants.
In addition to appellee's motion to dismiss, the parties filed affidavits, two of which by either party were appropriately unconditional and oneby appelleebeing "true and correct to the best of my knowledge, information and belief."
In our view, the complaint was properly dismissed, notwithstanding appellant's unpersuasive reliance upon Wilcox v. Stout, 637 So.2d 335 (Fla. 2d DCA 1994), which holds that if the plaintiff alleges a cause of action for conspiracy among defendants to commit tortious acts and if plaintiff shows that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to Florida's long-arm jurisdiction.
Subject to a future contrary determination by this state's highest court, we adopt the following conclusion of the Supreme Court of Delaware in Istituto Bancario Italiano v. Hunter Engineering Co., 449 A.2d 210 (Del.1982):
We therefore hold that a conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.
Thus, a defendant who has so voluntarily participated in a conspiracy with knowledge of its acts in or effects in the forum state can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws. It can further be said that such participation is a substantial contact with the jurisdiction of a nature and quality that it is reasonable and fair to require the defendant to come and defend an action there. Additional contacts would of course make even more equitable the jurisdiction.
449 A.2d at 225.
The complaint is the initial vehicle to supply the foregoing allegations, and here, even with consideration being given to the "affidavits," as well as the complaint's four corners, there are gaps to preclude jurisdiction.
Unless a minimum contact factor is already included in the conspiracy theory *601 test the imposition of long-arm jurisdiction cannot pass constitutional muster under World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), and International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528, (1985)(quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)), the Supreme Court explained that due process required that "there be some act by which the [nonresident] defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." A nonresident cannot ordinarily be subjected to jurisdiction solely on the basis of "unilateral activity of another party or a third person." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873-74, 80 L.Ed.2d 404(1984)). It is even more important to require the plaintiff to demonstrate minimum contacts in this context, where the entire basis for Florida's assertion of jurisdiction over the nonresident is an imputed act.[1] The test we adopt from Istituto Bancario contains a "minimum contact" component, while Wilcox does not.
GLICKSTEIN, STEVENSON and GROSS, JJ., concur.

ON MOTION TO CERTIFY CONFLICT
PER CURIAM.
We grant appellant's motion to certify that our decision herein conflicts with Wilcox v. Stout, 637 So. 2d 335 (Fla. 2d DCA 1994).
GLICKSTEIN, STEVENSON and GROSS, JJ., concur.
NOTES
[1] For further discussion of the co-conspirator theory, see Hasenfus v. Secord, 797 F.Supp. 958 (1989); Rudo v. Stubbs, 221 Ga.App. 702, 472 S.E.2d 515 (1996); Geo-Culture, Inc. v. Siam Inv. Management S.A., 147 Or.App. 536, 936 P.2d 1063 (1997); Hammond v. Butler, Means, Evins & Brown, 300 S.C. 458, 388 S.E.2d 796 (1990);. The conspiracy theory has also been applied to nonresident defendants who engage in price-fixing that affects commerce within the forum. See, e.g., St. Joe Paper Co. v. Superior Court in and for City & County of San Francisco, 120 Cal.App.3d 991, 175 Cal.Rptr. 94 (1981), cert. denied, 455 U.S. 982, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982).